IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **WELLS FARGO BANK, N.A.** | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 5:23-cv-154 (MTT) |
| **JEFFREY D. YOUNT,** | ) ) ) |
| Defendant. | ) ) |

## ORDER

Plaintiff Wells Fargo Bank, N.A. moves for summary judgment on its breach of contract claim against pro se defendant Jeffrey D. Yount based on unauthorized transfers into and out of Yount's Wells Fargo account.[1]  Doc. 16.  For the following reasons, Wells Fargo's motion (Doc. 16) is **GRANTED**.

---

[1] Wells Fargo also moves for summary judgment, in the alternative, on its unjust enrichment claim.  Doc. 16.  Because the Court concludes Wells Fargo is entitled to summary judgment on its breach of contract claim, the Court does not address Wells Fargo's unjust enrichment claim.

## I. BACKGROUND[2]

On August 19, 2022, Yount closed his "Wells Fargo Way2Save Checking account with account number ending in 9388 (the '9388 Account'),"[3] opened "a Wells Fargo Premier Checking account with account number ending in 2802 (the '2802 Account')," and then transferred the 9388 Account balance to the 2802 Account. Doc. 16-2 ¶¶ 1-3, 5. When Yount opened the 2802 Account, he signed a consumer account application "through which Yount agreed to be bound by the terms and conditions of the Wells Fargo Deposit Account Agreement, effective May 9, 2022." *Id*. ¶ 2. Under this Deposit Account Agreement, "if an account has an overdraft, it is the customer's responsibility to promptly add money to their account to return their account to a positive balance." *Id*. ¶ 11. "Customers also agree to reimburse Wells Fargo for the costs and expenses that Wells Fargo incurs in collection efforts." *Id*.

On September 6, 2022, an online transfer of $99,000.00 was deposited into Yount's 2802 Account from an M&T Bank account ending in 5791. *Id*. ¶ 6; Doc. 16-3 at 26. On September 7, 2022, Yount completed a wire transfer of $97,000.00 from his

---

[2] Unless otherwise stated, these facts are undisputed and are from Wells Fargo's statement of facts. Cognizant of Yount's pro se status, following Wells Fargo's motion for summary judgment, the Court advised Yount of his duty to respond to the motion, including the admonitions that he could not rely on the pleadings but instead must present evidence to establish a genuine issue of material fact and must provide his own statement of material facts and respond to Wells Fargo's statement of facts. Doc. 17. Despite this notice, Yount failed to respond. Because he failed to respond, the motion is unopposed and the facts in Wells Fargo's statement are therefore deemed admitted. M.D. Ga. L.R. 56. However, the Court further confirmed that the facts were supported by the record by "review[ing] all of the evidentiary materials submitted in support of" Wells Fargo's motion. *United States v. One Piece of Real Prop'y*, 363 F.3d 1099, 1101-02 (11th Cir. 2004); *Reese v. Herbert*, 527 F.3d 1253, 1269-70 (11th Cir. 2008). Moreover, despite Yount's failure to respond, because Yount is proceeding pro se and because summary judgment would lead to a judgment against him, the Court has fully analyzed Wells Fargo's claims for relief regardless of Yount's failure to respond. *One Piece of Real Prop'y*, 363 F.3d at 1101. Therefore, if evidence in the record shows that a fact is disputed, the Court draws all justifiable inferences in Yount's favor for purposes of summary judgment.

[3] Yount originally opened the 9388 Account with First Union Bank. Doc. 16-2 ¶ 3. Wells Fargo acquired First Union (or, "Wachovia") in 2008. *Id*. ¶ 4.

2802 Account "to a Silvergate Bank account ending in 7427."  Doc. 16-2 ¶ 7.  Wells Fargo discovered that the September 6, 2022 $99,000 transfer into Yount's 2802 Account was unauthorized and that transfer was therefore reversed on September 23, 2022.  *Id*. ¶ 8.

On September 20, 2022, another online transfer of $99,000.00 was deposited into Yount's 2802 Account, this time from an M&T Bank account ending in 2670.  *Id*. ¶ 6; Doc. 16-3 at 27.  That same day, Yount completed a wire transfer of $96,000.00 from his 2802 Account "to a JPMorgan Chase Bank account ending in 6807."  Docs. 16-2 ¶ 7; 16-3 at 27.  Wells Fargo discovered that the September 20, 2022 $99,000.00 transfer into Yount's 2802 Account was also unauthorized and that transfer was reversed on October 11, 2022.  Doc. 16-2 ¶ 8.  Yount also completed multiple debit card purchases after receiving both $99,000.00 deposits.  *Id*. ¶ 7.

"Because of the lack of sufficient funds in the 2802 Account, the 2802 Account became overdrawn in the principal amount of $197,913.98 as of October 31, 2022, inclusive of all fees and credits to the 2802 Account."  *Id*. ¶ 9.  Wells Fargo demanded Yount return his 2802 Account "to a positive balance."  *Id*. ¶ 12.  Yount did not.  *Id*.  Accordingly, on May 8, 2023, Wells Fargo filed this action against Yount for breach of contract or, in the alternative, unjust enrichment.  Doc. 1.  Yount's answer, in its entirety, stated:

> I Jeffrey Yount received summons from Wells Fargo on Saturday 5/27/23
>
> I was scammed into doing the 2 wire transfers after the money was received into my account at which I waited for grace period and thought money was legible [sic] before sending transfer

> I proceeded to file a police report with local police about what has occurred and also been working with a payback company to help me return the funds
>
> I also am working with a law firm to help me pay back loans that were taken out in my name and I'm trying to get Wells Fargo paid back this is a priority to me
>
> I apologize for this because I had this account for almost 20 years and I let someone mess this up

Doc. 7.

Wells Fargo now moves for summary judgment against Yount. Doc. 16. The Court sent Yount notice of Wells Fargo's motion on May 3, 2024, noting the importance of a response and the risk that a final judgment may be entered against him. Doc. 17. Yount failed to respond.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the *nonmoving* party has the burden of proof at trial, the moving

party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id*. at 1438 (quoting *Celotex*, 477 U.S. at 324) (alterations in original). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id*.

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact." *Id*. (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), "the court may … consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

District courts "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *One Piece of Real Prop'y*, 363 F.3d at 1101. In considering the merits of a motion for

summary judgment, even an unopposed motion, district courts must "review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* at 1101-02.  In other words, the Court cannot simply accept the facts stated in a moving party's statement of material facts as true.  *Id.*  Rather, "the district court must … review the record and determine if there is, indeed, no genuine issue of material fact." *Id.* at 1103 n.6.  If the review of the record "indicates a disputed issue of material fact, summary judgment [cannot] be granted." *Id.*

### III. DISCUSSION

Because the evidence shows Yount breached Wells Fargo's Deposit Account Agreement and Wells Fargo was damaged as a result, Wells Fargo is entitled to summary judgment.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."[4]  *McAlister v. Clifton*, 313 Ga. 737, 742, 873 S.E.2d 178, 183 (2022) (quoting *Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502, 705 S.E.2d 305, 306 (2010)); *see also Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019) ("To state a claim for breach of contract under Georgia law, [the plaintiff] had to plausibly allege that [the defendant] owed her a contractual obligation, then breached it, causing her damages.").  "Generally, one injured by the breach of a contract has the election to rescind or continue under the contract and recover damages

---

[4] The Deposit Account Agreement provides: "This Agreement, your accounts, services and any related disputes are governed by United States law and (when not superseded by United States law) the laws of the state where you opened your account (without regard to conflict of laws principles)."  Doc. 16-3 at 81. Although not in the record, the Court presumes Yount opened his account in Georgia because Wells Fargo agrees that Georgia law applies.  *See* Doc. 16-1 at 8.

-6-

for the breach." *W. Contracting Corp. v. State Highway Dep't*, 125 Ga. App. 376, 383, 187 S.E.2d 690, 696 (1972).

A "plaintiff in a breach of contract action has the burden of pleading and proving the existence of a valid contract." *Eastview Healthcare, LLC v. Synertx, Inc.*, 296 Ga. App. 393, 398, 674 S.E.2d 641, 646 (2009); O.C.G.A. § 13-3-1.  Georgia law requires "courts [to] interpret contracts in three steps: first, the court determines whether the contract language is clear and unambiguous.  If the language is clear, the court applies its plain meaning; if it is unclear, the court proceeds to step two.  At step two, the court attempts to resolve the ambiguity using Georgia's canons of contract construction.  If the ambiguity cannot be resolved using the canons, then the court proceeds to step three, where the parties' intent becomes a question of fact for the jury." *Tims*, 935 F.3d at 1237 (citing *City of Baldwin v. Woodward & Curran, Inc.*, 293 Ga. 19, 30, 743 S.E.2d 381, 389 (2013)).  "[I]n order to prevail on [its] claim, the plaintiff must present evidence from which the jury could find that the defendant breached the contract." *Eastview Healthcare, LLC*, 296 Ga. App. at 399, 674 S.E.2d at 646.

First, the contract here is valid, clear, and unambiguous.  When Yount applied for the 2802 Account, he submitted and executed a consumer account application.  Doc. 16-3 ¶ 3, at 8.  In that application, Yount agreed to the following: "I have received a copy of the applicable account agreement and the privacy policy (as each may be amended from time to time) and agree to be bound by their terms." *Id*. at 8.  The applicable account agreement is Wells Fargo's Deposit Account Agreement, effective May 9, 2022, which, in relevant part, provides:

> **If your account has an overdraft, you must promptly add money to return your account to a positive balance.**  If you don't return your

>   account to a positive balance or you have too many overdrafts, we may
>   close your account.  Also, we may report you to consumer reporting
>   agencies and initiate collection efforts.

*Id*. ¶ 11, at 44, 54 (emphasis in original).  Yount has not, and could not, dispute that this language is clear, unambiguous, and required him to return his account to a positive balance after an overdraft has occurred.

Second, Yount breached the Deposit Account Agreement.  On both September 6 and September 20, 2022, $99,000.00 was deposited into Yount's 2802 Account.  *Id*. ¶ 7, at 26-27.  A day after the first deposit, Young transferred $97,000.00 from his 2802 account; the same day as the September 20, 2022 deposit, Yount transferred $96,000.00 from his 2802 Account.  *Id*. ¶ 8, at 26-27.  Wells Fargo did not receive notice that the $99,000.00 deposits were unauthorized until after Yount completed the transfers and other debit card purchases.  *Id*. ¶¶ 8-9.  Therefore, when Wells Fargo reversed the $99,000.00 deposits, Yount's 2802 Account became withdrawn in a total amount of $197,913.98 as of October 31, 2022.  *Id*. ¶¶ 9-10, at 28, 37.  Wells Fargo demanded Yount add money to return his 2802 Account to a positive balance and Yount did not.  *Id*. ¶ 13.  Yount's failure to do so resulted in a breach of the Deposit Account Agreement between him and Wells Fargo.  *Hanham v. Access Mgmt. Group L.P.*, 305 Ga. 414, 418, 825 S.E.2d 217, 221 (2019) (quoting *Cooley v. Moss*, 123 Ga. 707, 51 S.E. 625 (1905) ("[A] breach of contract may arise … by failure to perform the engagement.")).

Finally, Wells Fargo was damaged as a result of Yount's breach.  Wells Fargo suffered monetary damages in the unpaid overdraft amount—$197,913.98.  Doc. 16-3 ¶ 14.  Wells Fargo has also incurred attorney's fees and costs because of Yount's breach.

Doc. 16-4 ¶¶ 7-9.  Under Georgia law, an award of litigation expenses in a breach of contract action is, generally, only allowed in limited circumstances.  O.C.G.A. § 13-6-11.  However, "[w]here the contract provides for an award of fees, the legal principles governing an award under O.C.G.A. § 13-6-11 … are inapplicable.  Thus, in the absence of a controlling statute, a party's entitlement to attorney fees under a contractual provision is determined by the usual rules of contract interpretation."  *Benchmark Builders, Inc. v. Schultz*, 289 Ga. 329, 330-31, 711 S.E.2d 639, 640 (2011) (citation omitted) (second alteration in original); *see also Cheeley Invs., L.P. v. Zambetti*, 332 Ga. App. 115, 118, 770 S.E.2d 350, 354 (2015) ("Our courts routinely enforce contractual provisions for attorney fees and expenses of litigation even when, at the time of the agreement, the triggering event (such as a legal proceeding to collect a debt by a creditor or the arbitration of a dispute arising out of a contract) has not and may never occur and where the agreed upon 'price term' is no more definite than 'reasonable attorney fees and expenses of litigation.'").  The Deposit Account Agreement clearly provides that Wells Fargo is entitled to the attorney's fees and costs it has incurred in its collection efforts: "You agree to reimburse us for the costs and expenses (including attorney's fees and expenses) we incur to [initiate collection efforts]."  Doc. 16-3 at 54.

Wells Fargo requests $21,280.66 in attorney's fees and costs.  Doc. 16-1 at 13.  Wells Fargo's attorney, Elizabeth Brunette, submitted a declaration and timesheets in support of the requested attorney's fees and costs.  Doc. 16-4.  Upon review of Brunette's declaration and timesheets, the Court concludes that Wells Fargo is entitled

to $18,889.50 in attorney's fees (77.1 hours x $245 hourly rate) and $751.48 in costs.[5] Doc. 16-4 ¶¶ 4, 7-8, at 11, 13-39.  Based on Brunette's declaration, timesheets, and experience, the relevant legal market, and the Court's experience, the Court finds that 77.1 hours and a $245 hourly rate—a reduced rate for Brunette—are reasonable.  Doc. 16-4; *see Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) ("A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."); *Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083, 1090 (11th Cir. 2022) (quoting *Norman*, 836 F.2d at 1303) ("[A] district court 'may consider its own knowledge and experience concerning reasonable and proper fees.'").  Accordingly, Wells Fargo is entitled to $19,640.98 ($18,889.50 + $751.48) in attorney's fees and costs.

## IV. CONCLUSION

For the above reasons, Wells Fargo's motion for summary judgment (Doc. 16) is **GRANTED**.  Wells Fargo is awarded breach of contract damages in the amount of $197,913.98, plus prejudgment interest to accrue at seven percent per annum, pursuant to O.C.G.A. §§ 7-4-2(a)(1)(A) and 7-4-15, beginning October 31, 2022 to the date of judgment, and post-judgment interest, pursuant to 28 U.S.C. § 1961.  Wells Fargo is further awarded attorney's fees and costs in the amount of $19,640.98.

---

[5] The Court notes that it did not include any time other than Brunette's because she is the only attorney who submitted a declaration in support of Wells Fargo's requested attorney's fees and the only attorney who has appeared on Wells Fargo's behalf.  Moreover, Brunette's declaration, without explanatory calculations, provides for $756.38 in costs.  Doc. 16-4 ¶ 7.  The Court is unsure how Brunette calculated $4.90 more for costs than what is provided for in the timesheets.

**SO ORDERED**, this 9th day of July, 2024.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
